PEOPLE *v.* MORSE.

1. EVIDENCE—SCIENTIFIC TESTS.

Until reasonable certainty can follow from so-called scientific tests, demonstrable by experts in the giving of such tests, the failure to admit the results of such tests is not, as a matter of law, error.

2. SAME—SCIENTIFIC PRINCIPLES.

Although it is difficult to determine just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages, the evidential force of the principle through expert testimony will not be recognized by the courts until the principle has gained general acceptance in the particular field in which it belongs.

3. CRIMINAL LAW—NEGLIGENT HOMICIDE—HARGER DRUNKOMETER— EVIDENCE.

Since there is not general acceptance of the breath test, applied by the Harger Drunkometer, to determine from an analysis of a person's breath whether the alcoholic content of the blood was such as to render the person so far under the influence of intoxicating liquor as to impair his ability to drive an automobile, admission in evidence of testimony based upon tests made with such apparatus was reversible error in prosecution for negligent homicide.

4. SAME—FAILURE TO PRODUCE CONNECTIVE EVIDENCE—NEW TRIAL.

In prosecution for negligent homicide while the admission of testimony and exhibits relating to a piece of gray cloth allegedly found after the accident on the front of defendant's automobile and of testimony that deceased was then wearing a dark gray suit, without production in court of the piece

---

REFERENCES FOR POINTS IN HEADNOTES

[3] 20 Am Jur, Evidence, § 876.
[3] Admissibility and weight of evidence based on scientific test for intoxication or presence of alcohol in system. 127 ALR 1513; 159 ALR 209.

of cloth, the suit, or an explanation of the failure to so produce would have been error, over objection, and there was a failure to tie up to defendant's automobile testimony concerning skidmarks on the pavement at scene of accident, such errors are not apt to recur on a new trial and are not made the basis of reversal.

Appeal from Recorders Court for the City of Detroit; Elliott (Philip), J, presiding.    Submitted April 14, 1949.  (Docket No. 73, Calendar No. 43,-902.)  Decided June 29, 1949.   Rehearing denied September 8, 1949.

Donald F. Morse was convicted of negligent homicide.  Reversed and remanded for new trial.

*Lewis & Watkins* .(*James K. Watkins* and *John R. Watkins*, of counsel), for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Garfield Nichols* and *Edward T. Kelley,* Assistant Prosecuting Attorneys (*Robert N. Smiley,* of counsel), for the people.

DETHMERS, J.  Defendant appeals from a conviction of negligent homicide, assigning as error the admission into evidence of testimony concerning the results of a test voluntarily taken by him on a so-called "Harger Drunkometer" and deductions drawn therefrom as to his being under the influence of intoxicating liquor at the time of the accident.

It is plaintiff's position, supported by proofs, that it is generally accepted by medical authorities (1) that a chemical analysis of a specimen of blood, urine or other body fluid will accurately disclose the percentage of alcohol contained in the blood and (2) that when the blood alcohol concentrate of a subject is 0.15 per cent. or more, by weight, he is under the influence of intoxicating liquor to the extent of im-

pairment of his ability to drive an automobile. On the basis of that general acceptance by the medical profession it has been held that evidence of the taking of such specimen at or near the time in question, of its chemical analysis, and of the alcoholic content of the blood as determined by such analysis, together with expert opinion testimony as to what the presence of such alcoholic content in the blood indicates with respect to the subject's intoxication or sobriety, are admissible. See 20 Am Jur (1948 Supp), Evidence, § 876; 127 ALR 1513; 159 ALR 209; *State v. Duguid,* 50 Ariz 276 (72 P2d 435); *State v. Morkrid,* — Iowa — (286 NW 412); *Kuroske v. Aetna Life Insurance Co.,* 234 Wis 394 (291 NW 384, 127 ALR 1505).

Is there general scientific recognition that the breath test applied by the Harger Drunkometer will afford an accurate index of the alcoholic content of the blood? Two policemen, both trained in chemistry, one of whom studied the Drunkometer for a month under the inventor and then instructed the other with respect thereto, and a doctor who had worked as a student assistant to the inventor, Harger, gave complex explanations of the underlying theory and *modus operandi* of the device and testified for plaintiff that, in their opinion, the Drunkometer produces accurate results as to the alcoholic content of the blood. To the same effect is an article by Harger and associates entitled "A Rapid Chemical Test for Intoxication Employing Breath" appearing in the journal of the American Medical Association, vol 110, p 779. Contra is the testimony of 5 doctors sworn for the defense, one of whom testified that "what is going on in this test is that you have got a continuous series of errors, some for and some against, so that the thing works like a slot machine," and another of whom testified that most of the medical profession do not regard the instru-

ment reliable. Their views find direct support in a report appearing in 26 Journal of Laboratory and Clinical Medicine, p 1527, by Dr. Haggard, professor of physiology and director of the Alcohol Institute at Yale University, and others, and, indirectly, in other medical and scientific reports and articles. Under such state of the record there would seem to be applicable here what the supreme court of Wisconsin said concerning the so-called lie detector in *State* v. *Bohner,* 210 Wis 651, 658 (246 NW 314, 86 ALR 611), as follows:

"The present necessity for elaborate exposition of its theory and demonstration of its practical working, in order to convince the jury of its probative tendencies, together with the possibility of attacks upon the soundness of its underlying theory and its practical usefulness, may easily result in a trial of the lie detector rather than the issues in the cause."

There is no testimony in the record that there is general acceptance by the medical profession or general scientific recognition of the results of a Harger Drunkometer test as accurately establishing the alcoholic content of a subject's blood and thus the extent of his intoxication.

"The record is devoid of evidence tending to show a general scientific recognition that the pathometer possesses efficacy. Evidence relating to handwriting, finger printing and ballistics is recognized by experts as possessing such value that reasonable certainty can follow from tests. Until such a fact, if it be a fact, is demonstrated by qualified experts in respect to the 'lie detector,' we cannot hold as matter of law that error was committed in refusing to allow defendant to experiment with it." *People* v. *Forte,* 279 NY 204 (18 NE2d 31, 119 ALR 1198).

"Just when a scientific principle or discovery crosses the line between the experimental and de-

monstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

"We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among the physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made." *Frye* v. *United States,* 54 App DC 46 (293 F 1013, 34 ALR 145).

While plaintiff contends that a different rule should apply to the admissibility of evidence concerning a lie detector test than to that of a Drunkometer test because the former relates to a mental and the latter to a physical fact, both involve tests by scientific devices, the accuracy of which can scarcely be determined by a jury on the basis of complicated, scientific testimony concerning the theory and operation of the devices in the face of a difference of scientific opinion as to their accuracy. We think there should be applied here what this Court said concerning the lie detector in *People* v. *Becker,* 300 Mich 562 (139 ALR 1171). In that case, after quoting from 20 Am Jur, p 633, the following:

"The instances in which such criteria have been subjected to judicial scrutiny are relatively infrequent. Those which have passed upon the question have held that the systolic blood pressure deception test for determining the truthfulness of testimony has not yet gained such standing and scientific recognition as to justify the admission of expert testimony deducted from tests made under such theory."

this Court went on to say:

"We see no reason why, under the circumstances of this case, the result should have been admitted. There was no testimony offered which would indicate that there is at this time a general scientific recognition of such tests."

The admission into evidence of testimony concerning the Drunkometer and the results of the test thereby imposed on defendant was error.

Defendant also assigns as error the admission of testimony and exhibits relating to a piece of gray cloth allegedly found, after the accident, on the front of defendant's automobile and of testimony that the deceased was, at the time of the accident, wearing a dark gray suit, without production in court of the piece of cloth, the suit, or an explanation of the failure to so produce. Plaintiff contends that defendant is not in position to complain because he failed to make proper objection at the trial. There can be no doubt that such admission, under the circumstances, over objection, would be error. The same may be said for testimony concerning skidmarks on the pavement at the scene of the accident if not properly tied up to defendant's automobile. The error complained of in the court's charge to the jury will not likely occur on retrial and therefore merits no further discussion.

Sentence is vacated, the conviction reversed and set aside and the cause remanded for a new trial.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.