STATE OF CONNECTICUT *v.* HELEN H. ADAMS

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 1-23340

Argued December 9, 1963—decided February 5, 1964

*Alfred A. Santaniello,* of Norwalk, for the appellant (defendant).

*William L. Tierney, Jr.,* prosecuting attorney, for the appellee (state).

JACOBS, J.  The defendant has appealed from a judgment based on a finding of guilt upon a complaint charging her with the crime of operating a

motor vehicle while under the influence of intoxicating liquor in violation of § 14-227 of the General Statutes. The assignment of error addressed to this court attacks the finding and the conclusions of the court, but the ultimate question is presented by her claim that the court erred "[i]n concluding upon all the evidence that . . . [she] was guilty of the crime charged beyond a reasonable doubt." "This assignment of error goes to the root of the criminal accusation." *State* v. *Robington,* 137 Conn. 140, 142.

The evidence shown by the finding to have been believed by the court, supplemented by such inferences as it could reasonably draw, may be summarized as follows: On July 14, 1963, at about 10 p.m., the defendant was operating a blue 1959 Pontiac convertible automobile in an easterly direction on the Merritt Parkway in the town of Westport. It was a hazy night, the roads were wet; it had been raining hard at 7 p.m. She was the sole occupant of the vehicle. The manner of her operation was first observed by Vantine, an auxiliary state policeman who had been assigned to patrol duty on the Merritt Parkway. He noticed that her car was "weaving erratically" and on two or three occasions had "bounced off" the right-hand curb and into the other lane of traffic. He radioed a state trooper, Ronald Dalton, who responded to the call but was unable to overtake the defendant's vehicle because traffic had been building up in both lanes. He finally managed to get behind her vehicle for about two-tenths of a mile. She struck the right-hand curbing several times, drifted from one lane to another, and then cut sharply back into the right-hand lane. While the trooper was attempting to attract her attention by sounding his siren, the defendant again moved into the left-hand lane, forcing the trooper's car onto the esplanade. The

defendant came to a stop at the intersection with route 57. She parked her vehicle partly on the traveled portion of the highway and partly on the grass area, and, upon orders from the trooper, pulled her car completely onto the esplanade. She was told to turn off the ignition and set the emergency brake. The car began to roll away because she failed to pull up the emergency brake as directed, and as a result the officer had to run along the side of the car and try to steer it at the same time until she pulled up the emergency brake. Upon getting out of her vehicle, she fell backwards and had to be supported by the officer, who also had to assist her in getting into the police car. Her speech was not coherent, her dress was orderly, her eyes were a little watery, a faint odor of liquor was detected on her, her knees were sagging and she swayed as she got out of the car. She admitted to the police officers that she had "two Scotches" at the home of a friend.

Both officers testified that, on the basis of their observation of the manner in which the defendant operated the vehicle, their conversations with her and her responses and general appearance, she was under the influence of intoxicating liquor and unfit to operate a motor vehicle. The defendant took the witness stand. She denied she was under the influence of intoxicating liquor. There was a sharp conflict as to the defendant's condition at the time in question. This presented a question of credibility. The fact that one set of witnesses is believed rather than another upon a closely controverted issue affords no ground in and of itself for interfering with the finding of the court. Upon the disputed issue of her intoxication, the court concluded that "the defendant was under the influence of [intoxicating] liquor to such an appreciable degree that her ability to operate a motor vehicle was greatly impaired."

In her brief and upon oral argument, operation was conceded, but she has emphasized and pressed upon us the absence in this case of chemical tests or clinical findings to establish her condition. We are, of course, aware that in the past few decades the evidential value of chemical testing of bodily tissues and fluids to determine their alcohol content has become increasingly more recognized. See notes, 127 A.L.R. 1513, 159 A.L.R. 209; 30 N.C.L. Rev. 302. But the chemical-test finding is, at best, probative and not conclusive evidence. See *People* v. *Bobczyk,* 343 Ill. App. 504; *People* v. *Wyner,* 207 Misc. 673; *People* v. *Spears,* 201 Misc. 666. The law permits nonexpert lay witnesses to testify to objective symptoms commonly associated with alcoholic intoxication, on the theory that sobriety and intoxication are matters of common knowledge. See 2 Wigmore, Evidence (3d Ed.) §§ 571, 660; 8 Blashfield, Automobile Law and Practice (Perm. Ed.) § 5476. "The condition of intoxication and its common accompaniments are a matter of general knowledge." *State* v. *Jones,* 124 Conn. 664, 667; *D'Amato* v. *Johnston,* 140 Conn. 54, 58; 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 331; note, 68 A.L.R. 1356, 1364. "In the last analysis, the defendants ask that this court retry the case on the evidence. We do not do this." *Lopez* v. *Price,* 145 Conn. 560, 564.

We are satisfied, from a careful study of the whole record in the case before us, that on all the evidence, including the inferences which the court was amply warranted in drawing, it was justified in concluding that the defendant was guilty of the offense charged beyond a reasonable doubt.

There is no error.

In this opinion KOSICKI and LEVINE, Js., concurred.