WARVEL v MICHIGAN COMMUNITY BLOOD CENTER

1. JUDGMENT—MOTIONS—SUMMARY JUDGMENT—ACCELERATED JUDG-
   MENT—COURT RULES.

   The Court of Appeals may still consider whether partial sum-
   mary judgment would be appropriate where the trial court
   granted a defendant's motion for partial accelerated judgment
   but the motion should have been a motion for partial summary
   judgment where there is no prejudice to the plaintiff (GCR
   1963, 116, 117.2).

2. JUDGMENT—SUMMARY JUDGMENT—NO GENUINE ISSUE—MATERIAL
   FACT—STANDARD OF REVIEW—COURT RULES.

   The standard to be employed in reviewing a grant of summary
   judgment because there was no genuine issue as to any mate-
   rial fact is whether the kind of record which might be devel-
   oped, within the limits indicated by the pleadings and the
   affidavits or other material supporting and opposing the motion
   for summary judgment, interpreted to give the benefit of any
   reasonable doubt to the opposing party, would leave an issue
   upon which reasonable minds might differ or upon which a
   directed verdict would be proper (GCR 1963, 117.2[3]).

3. TRIAL—QUESTION OF LAW—BLOOD PRODUCTS—FITNESS OF BLOOD
   PRODUCTS—MEDICAL TESTS—STATUTES.

   The issue of whether or not there is a medical test pursuant to
   statute to determine the fitness of whole blood, plasma, blood
   products or blood derivatives is a preliminary question of law
   for a trial judge to decide and not a question of fact for the jury
   (MCLA 691.1511; MSA 14.528[1]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur 2d, Judgment §§ 1080–1213.
[2] 73 Am Jur 2d, Summary Judgment § 30.
[3] 75 Am Jur 2d, Trial § 320.
[4] 73 Am Jur 2d, Statutes §§ 272, 275.
[5] 30 Am Jur 2d, Evidence §§ 818 *et seq.* 1104.
[6] 29 Am Jur 2d, Evidence § 370.
   30 Am Jur 2d, Evidence § 1104.

4. STATUTES—STATUTORY CONSTRUCTION—LEGISLATIVE INTENT.

The Court of Appeals has a responsibility, when interpreting controverted statutory language, to effectuate the Legislature's intent; guidance may be found by resorting to decisions of the appellate courts of this state which have dealt with similar issues.

5. EVIDENCE—SCIENTIFIC TESTS—FOUNDATION FOR ADMISSION—SCIENTIFIC RECOGNITION FOR ACCURACY.

The critical factor which must be shown prior to admitting scientific test results into evidence is whether the record shows a general scientific recognition that the scientific test possesses efficacy.

6. EVIDENCE—BLOOD PRODUCTS—SCIENTIFIC TESTS—FITNESS OF BLOOD PRODUCTS—DEPOSITIONS.

Failure of a defendant to demonstrate that tests for determining the fitness of whole blood, plasma, blood products, or blood derivatives had attained a general scientific recognition for accuracy justified the trial court in ruling that as a matter of law such tests had not attained a general scientific recognition for accuracy.

Appeal from Oakland, William P. Hampton, J. Submitted December 17, 1976, at Detroit. (Docket No. 26437.) Decided March 29, 1977.

Complaint by Lillian Warvel and Frederick Warvel against Michigan Community Blood Center, American Red Cross, Southeastern Michigan Chapter and Providence Hospital seeking damages (1) for breach of express and implied warranties that blood received by Lillian Warvel was of merchantable quality and fit for transfusion, and (2) for loss of consortium. Partial accelerated judgment for defendants Michigan Community Blood Center and American Red Cross, Southeastern Michigan Chapter. Plaintiffs appeal by leave granted. Affirmed.

*Barbara, Ruby, Domol, Bowerman, Miller &*

*Aaron, P. C.* (by *Walter A. Lucken, Jr.*), for plaintiff.

*Garan, Lucow, Miller, Lehman, Seward & Cooper, P. C.* (by *James L. Borin*), for defendant Michigan Community Blood Center.

*Kitch & Suhrheinrich, P. C.* (by *James G. Smith*), for defendant American Red Cross, Southeastern Michigan Chapter.

Before: R. M. MAHER, P. J., and V. J. BRENNAN and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiff Lillian Warvel received a whole blood transfusion August 18, 1971, in the course of childbirth at defendant Providence Hospital. On December 24, 1971, she was diagnosed as having serum hepatitis. A complaint was filed against Providence Hospital May 15, 1973, in Oakland County Circuit Court seeking damages for breach of express and implied warranties that the blood was of merchantable quality and reasonably fit for transfusion and, additionally, for loss of consortium.

In an amended complaint filed October 2, 1974, plaintiffs added as parties defendant Michigan Community Blood Center and the American Red Cross Southeastern Michigan Chapter and also added, against all defendants, counts of negligence and failure to inform of the risks inherent in blood transfusions.

In its answer, defendant Providence Hospital alleged as an affirmative defense that furnishing blood is the rendering of a service, and does not constitute a sale to which warranties attach, relying on the blood banking and transfusion act, 1967 PA 174, MCLA 691.1511; MSA 14.528(1). Defend-

ants filed a motion for accelerated judgment on the same basis. As applicable to this case, prior to its amendment in 1973, the act provides:

"The procurement, processing, storage, distribution or use of whole blood, plasma, blood products, and blood derivatives, for the purpose of injecting or transfusing them, or any of them, into the human body for any purposes whatsoever where there is no medical test to determine the fitness of such whole blood, plasma, blood products, or blood derivatives, is the rendering of a service and does not constitute a sale by any person participating therein, whether or not any remuneration is paid therefor."

In response to the motion for accelerated judgment, plaintiffs requested an evidentiary hearing on the question whether in 1971 medical tests existed "to determine the fitness" of whole blood. Pursuant to an order of February 5, 1975, an evidentiary hearing was authorized, to be accomplished by deposing four expert medical witnesses. Subsequently, these depositions were submitted to Judge Hampton and oral argument on the motion for accelerated judgment was heard by Judge Hampton on July 2, 1975.

After reviewing the depositions and listening to arguments, Judge Hampton rendered his decision. The judge concluded that, based upon his view of the statute, it was the trial judge's duty to determine what is a test under the statute and whether one existed; once it was concluded that there was a test in existence, it would then be a question for the jury to determine whether there existed an implied warranty in this particular instance and, if so, whether it was breached. However, the judge concluded that there was no recognized medical test known at the time of the transfusion which would indicate with any degree of reliability the

presence of hepatitis in the blood. Accordingly, he granted partial accelerated judgment on the warranty counts. Plaintiffs appeal from this decision by leave granted.

Initially, we note that the trial judge's characterization of his decision as an accelerated judgment is erroneous. "It was not the intention of the drafters in drafting GCR 1963, 116.1 to 'enlarge or diminish' the defenses available under Court Rule No. 18 (1945). Motions brought pursuant to GCR 1963, 116.1 were intended to be restricted to the specific claims set forth in the rule." (Citations omitted.)[1]

It is obvious that the defendants' motion in the instant case does not fit within the purview of any of the specific provisions of GCR 116. Instead, it properly should have been labeled as a partial summary judgment because "there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law". GCR 1963, 117.2(3). "Although the trial judge granted the motion on the basis of accelerated judgment, we may still consider whether the summary judgment would be appropriate * * *, since there is no prejudice to the * * * [plaintiff]."[2]

The standard of review which we are to employ when reviewing the grant of summary judgment under GCR 1963, 117.2(3) has been succinctly stated in *Rizzo v Kretschmer,* 389 Mich 363, 371–372; 207 NW2d 316 (1973):

" 'When summary judgment is claimed for lack of factual merit, the court must be careful not to substitute a summary hearing for a trial. The *trial may be avoided only if the record presented at the hearing*

---

[1] *Stewart v Troutt,* 73 Mich App 378, 382; 251 NW2d 594 (1977).

[2] *Stewart, supra,* at 383.

*shows that,* \* \* \* ; *or (2) an essential element of proof of the claim or defense cannot be supplied.*

\*   \*   \*

" 'Motions grounded upon sub-rule 117.2(3) must be supported by affidavits. The purpose of the affidavit is to assert the dispositive fact or facts upon which the moving party claims no genuine dispute exists. Although the Rule does not require opposing affidavits, it is the *obligation of the opposing party to make a showing by opposing affidavits, testimony, depositions, admissions or documentary evidence on file that a genuine issue of disputed fact does exist* as to the questioned element of the claim or defense. *Durant v. Stahlin,* 1965, 375 Mich. 628, 135 N.W.2d 392.

\*   \*   \*

" 'In motions under sub-rule 117.2(3), the court must look beyond the pleadings to determine whether a question of fact exists. *The supporting affidavit,* which must be filed with such a motion, *identifies those facts* which may appear to be controverted in the pleadings but *which, the mover asserts, cannot be genuinely disputed. The party opposing the motion must then come forward with a showing that there is evidence to make an issue on which a dispute truly exists.* If no such showing is forthcoming, summary judgment is granted. See *Durant v. Stahlin,* 1965, 375 Mich. 628, 135 N.W.2d 392; *Podvin v. St. Joseph Hospital,* 1963, 369 Mich. 65, 119 N.W.2d 108.

\*   \*   \*

" '[T]he test more carefully stated would be whether the kind of record which might be developed, within the limits indicated by the pleadings and the affidavits or other material supporting and opposing the motion for summary judgment, *interpreted to give the benefit of any reasonable doubt to the opposing party,* would leave an issue upon which reasonable minds might differ or upon which a directed verdict would be proper.' (Emphasis added.)"

With this standard in mind, let us examine the correctness of the trial judge's ruling. We think

the crucial question on this appeal is what interpretation should be placed on the language "medical test to determine the fitness of such whole blood". While we do not necessarily endorse all of the reasoning expressed by the trial judge, we agree with the result he reached.

The trial judge was of the opinion that the phrase "medical test" meant a laboratory test. Thus, he concluded that the depositions, which stated that the lab tests were, at best, only 45–60% effective, hardly amounted to the type of a medical test contemplated by the Legislature. Plaintiffs claim that the trial judge erred in not considering the testimony in the depositions that shows with screening of blood donors, through interviews and physical examinations in conjunction with the blood tests, the effectiveness of hepatitis detection is increased to somewhere in the 90% range. It is plaintiffs' position that this amounts to a medical test under the statute. Moreover, it is contended that whether such a test exists is a question of fact for the jury not, as the trial judge determined, a preliminary question of law for the judge. We disagree.

We perceive that the proper question for review may be stated thus: Even if plaintiffs' assertion that the trial court erred in excluding pre-screening devices is accepted as true, does this qualify as a proper medical test under the statute. We answer this question in the negative.

In reaching this decision, we are, of course, mindful of this Court's responsibility, when interpreting controverted statutory language, to effectuate the Legislature's intent. *Aikens v Department of Conservation,* 387 Mich 495; 198 NW2d 304 (1972). To properly determine the meaning to be accorded to the disputed language, we think guidance may be found by resorting to decisions of the

appellate courts of this state which have dealt with the issue of when the results of scientific or medical tests are admissible in evidence.

In *People v Morse,* 325 Mich 270, 273; 38 NW2d 322 (1949), the Michigan Supreme Court stated the critical factor which must be shown prior to admitting into evidence scientific test results is whether the record shows a general scientific recognition that the scientific device possesses efficacy. See also, *People v Becker,* 300 Mich 562; 2 NW2d 503 (1942), and *People v Kozar,* 54 Mich App 503; 221 NW2d 170 (1974), *lv den* 392 Mich 819 (1974). Moreover, they stated a warning that the "accuracy of [these tests] can scarcely be determined by a jury on the basis of complicated, scientific testimony concerning the theory and operation of the devices in the face of a difference of scientific opinion as to their accuracy". *Morse, supra,* at 274.

We are of the view that the Legislature heeded the wise counsel of the Court in *Morse* and envisaged a medical test which met the requirement set forth above and, moreover, intended that this was a preliminary question of law for the judge. Thus, we must determine from the evidence adduced by way of depositions in the court below whether any test, or battery of tests, at the time this injury occurred had attained a general scientific recognition for accuracy. Clearly, the answer is no.

It was undenied by all the expert witnesses that there were tests which measured the fitness of whole blood. However, it was conceded, even by plaintiffs' experts, that no test had demonstrated reliability sufficient to have achieved general scientific acceptance for its accuracy. For this reason, we affirm the decision below. Costs of this appeal to defendant.