## STATE OF FLORIDA v. BLUE

### Case No. TO84-72294;95

County Court, Orange County

February 15, 1985

APPEARANCES OF COUNSEL

**Marie Capelotti,** Assistant State Attorney for plaintiff.

**Stuart I. Hyman, NeJame & Hyman, P.A.** for defendant.

## OPINION OF THE COURT

DOROTHY J. RUSSELL, Orange County Court Judge

## ISSUE

DOES AN ARRESTEE WHO IS IN THE CUSTODY AT THE BATMOBILE FOR D.U.I. HAVE THE RIGHT TO CONSULT WITH COUNSEL PRIOR TO MAKING THE DECISION WHETHER TO TAKE THE BREATHALYZER?

## FINDINGS OF FACT

The Defendant, John Blue, was observed by Dep. Luis Perez driving his motor vehicle, weaving off the road on to residential yards, not maintaining a steady pace. Dep. Perez stopped the Defendant, got him out of his car, observed the Defendant to have poor balance, red eyes, and an order of the impurities of alcohol on his breath. Dep. Perez immediately asked the Defendant if he had been drinking, to which the Defendant replied that he'd been drinking beer for a couple of hours. The Defendant was then requested to perform the standard field sobriety tests, which he did not complete satisfactorily. At 2:26 a.m. he was placed under arrest for D.U.I. and taken to the Batmobile located at Pine Hills Road and S.R. 50 where Trooper Greg Shuman conducted the video portion of the procedure. Dep. Perez recalls that the Defendant did not ask to speak to an attorney before he was taken to the Batmobile. On the video the Defendant did request to talk to an attorney before deciding to take the breathalyzer. He was read the Implied Consent warnings, but said he could not understand them. He was given the text to read, but still said he did not understand. Trooper Shuman then attempted to clarify the warnings in general terms by giving him the high points—basically if he didn't submit to the test he would lose his license for 6 months. At 3:25 a.m. the Defendant did take the test without an opportunity to consult with counsel, since no phone is available at the Batmobile. He blew a .16% by weight of alcohol in his blood.

## CONCLUSIONS OF LAW

We start with the premise that one purpose behind statutes authorizing presumptions of intoxication is to reduce the number of D.U.I. cases in which intoxication must be proven by resort to extrapolation testimony. Chemical testing is reasonable for both the driver and the state; it is the most reliable method of determining if a person is under the influence. Scientific accuracy revealed by chemical tests on motorists suspected of D.U.I. may exonerate a motorist just as readily and conclusively as it may incriminate him. Chemical testing eliminates guesswork and speculation. Particularly in "borderline cases" it can supplement the fallible observations by humans of behavior seemingly

4

symptomatic of intoxication. *People v. Suddath*, 421 P.2d 401, 403 (1967).

Medical science recognizes 60 pathological conditions which produce symptions similar to those produced by alcohol. *People v. Bobczyk*, 343 Ill. App. 504, 510; 99 NE 2d 567, 570 (1951). Chemical testing eliminates mistakes from objective observations alone, and it discloses the truth where a driver claims that he has drunk only a little and couldn't be intoxicated. It protects the person who has not been drinking to excess but has an accident and has the odor of alcohol on his breath. It saves a person from a drunken driving charge when his conduct creates the appearance of intoxication but who actually is suffering from other causes over which he has no control. *Robertson v. State ex rel Lester*, 501 P.2d 1099, 1102 (Okla. 1971), *Peterson v. State*, 261 N.W.2d 405, 410 (S.D. 1977).

The defendant has no constitutional right to refuse to submit to a breathalyzer—only a statutory power to refuse. *State of Idaho v. Curtis*, 680 P.2d 1383 (Idaho Ct. App. 1984); Section I.C. 49-352; *Pena v. State*, 684 P.2d 864 (Alaska 1984); Section A.S. 28.35.031, *S.D. v. Neville*, 459 U.S. 460, 103 S.Ct. 916, 923, 74 L.Ed. 2d 748 (1983).

The legislature has the power to create laws to control drunk drivers and to place conditions on this grant of statutory power. If the defendant refuses, his driver's license is suspended in virtually every state that has the implied consent provision. The driver's license revocation is a civil, administrative procedure subject to the defendant's right to request a hearing before the court. The appellate court of Illinois held that to allow an individual who is too intoxicated to knowingly refuse a blood test to escape deterrent and retributive effects of the implied consent statute would not further the statutory purpose of making the streets and highways safer for citizens by making prosecution of intoxicated drivers easier. *People v. Solzak*, 466 N.E.2d 1201 (Ill. Ct. App. 1st Dist. 3d Div. 1984).

Kansas has enacted an implied consent statute, K.S.A. 8-1001(a) and (c) which is quite similar to Florida's implied consent statute Section 316.1932. Section (c) of the Kansas statute states: "If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given. . . ." Idaho Statute 49.532 states: ". . . if such person having been placed under arrest and having thereafter been requested to submit to such a chemical test refuses to submit to such chemical test the test shall not be given but the director shall suspend his license. . . ." Florida Statute 316.1932 does not go so far as to say if the defendant refuses to submit that it "shall not be given", but it does

provide for the same two consequences as Kansas and Idaho if it is refused: license revocation and the admission into evidence at trial of the refusal.

The courts of many states have addressed the issue of whether a person accused of D.U.I. has a right to consult with counsel prior to exercising or waiving his statutory right to refuse the administration of a Blood Alcohol test (BAT). A number of them, including Arizona, Georgia, Kentucky, Oklahoma, Oregon, New Hampshire, and Rhode Island have concluded that *no* such right to counsel exists. Others, including Minnesota, Missouri, North Carolina, New York, Ohio, and Washington, have upheld the right to counsel. *State v. Bristor*, 9 Kan. App. 2d 404, 682 P.2d 122 (Kans. Ct. App. 1984).

Most states, as in Florida, in their legislative enactments are silent on the issue of whether a defendant has a right to consult with counsel prior to submitting to a test of his blood-alcohol content. However, the appellate courts of many states have found that one is not entitled to advice of counsel before being required to take a breathalyzer test. *Campbell v. Superior Court of Arizona*, 106 Ariz. 542, 479 P.2d 685 (Arizona 1971); *Calvert v. State*, 519 P.2d 341 (Colo 1974); *People v. Mulack*, 40 Ill. 2d 429, 240 N.E. 2d 633 (Ill. 1968); *Holmberg v. 54-A Judicial District Judge*, 60 Mich. App. 757, 231 N.W. 2d 543 (Mich. Ct. App., Div. 2 1975); *Lewis v. Nebraska State Department of Motor Vehicles*, 191 Neb. 704, 217 N.W. 2d 177 (Neb. 1974); and in our own circuit, *State v. Roche*, 1 Fla.Supp.2d 171 (Cty. Ct. 1981); *State v. Hoff*, Case No. AP81-61, Apr. 7, 1983. (See also *Smith v. State*, 378 So.2d 281 (Fla. 1979).

The Kansas appellate courts have consistently held that the arresting officer has no duty to explain to the defendant his rights under the implied consent statute; therefore, the warning that is read to the defendant is:

Kansas law provides that a person who drives a motor vehicle shall be deemed to have given consent to submit to a chemical test of breath or blood to determine the alcoholic content of the person's blood whenever the person is arrested or taken into custody for operating a motor vehicle while under the influence of alcohol.

Your right to consent or refuse to take a chemical test is not a constitutional right. *You have no constitutional right to consult with an attorney as to whether or not you will take the test. . . .* [emphasis added]

The Supreme Court of Kansas in July 1984 held that the right to drive a motor vehicle on public streets is not a natural right but a

6

privilege subject to reasonable regulations in the public interest. Further, the chemical testing provides the best available and most reliable method of determining whether a driver is under the influence of alcohol, and it protects the accused as well as the public.

As to a right to counsel, the court stated in *Standish v. Dept. of Motor Vehicle Div.,* 683 P.2d 1276 (Kans. 1984):

> Since Kansas law deems all drivers to have given consent to chemical tests of blood or breath when arrested for driving under the influence and that if the person arrested refuses to submit to the test certain consequences follow, no constitutional right to counsel to determine whether to submit to the test attaches; *if it is convenient to give the person an opportunity to call an attorney, that procedure may be followed, but contacting an attorney or having one present is not an abslute right and cannot be used to delay or thwart the implied consent procedure.* [emphasis added]

In Arizona the courts have determined the accused has no right to consult with counsel regarding chemical testing and so state in their warnings at the time:

> "1. ARS Section 28.691, as amended, requires you to submit to a chemical breath test to determine the alcohol content of your blood. If you refuse to submit to this test, your right to drive will be suspended. . . . I am, therefore, requesting you submit to a breath test.

> "2. Those rights of which you have just been advised, that is the right to remain silent or to speak with an attorney, have an attorney present during questioning, or to have one appointed for you, do not apply to this request.

> "3. If you remain silent, your silence will be considered a refusal to take the test. Likewise, you are advised that regardless of what an attorney may advise you regarding submission to this test, if you refuse to take the test, your right to drive will still be suspended. . . ."

A great deal of confusion has arisen because of the inconsistency between the Miranda warnings and the Implied Consent situation. The Minnesota Supreme Court has counseled against giving Miranda before asking for chemical tests in Implied Consent situations. *State v. Gross,* 335 N.W. 2d 509, 520 (Minn. 1983); *State Dept. of Highways v. Beckey,* 291 Minn. 483, 192 N.W. 2d 441 (Minn. 1971)—the rationale being that the Implied Consent is civil in nature. The Court in *Prideaux* stated:

Giving Miranda warning which implies there are no penalties for refusing to cooperate in an implied consent situation, where there are substantial penalties for refusing to cooperate, is confusing to the driver. It can be so confusing that he would have reasonable grounds to refuse the test. *Prideaux v. State Dept. of Public Safety*, 310 Minn. 405, 406 n. 2, 247 N.W. 2d 385, 387 n. 2 (Minn. 1976)

The right to counsel in an implied consent situation is a limited statutory right. *Prideaux, supra.* However, Minnesota Statute 169.123(2)(b)(3) Supp. 1983 provides:

"At the time a chemical test specimen is requested, the person shall be informed . . . (3) that the person has a right to consult with an attorney."

Furthermore, Minnesota requires that the officer must assist in the vindication of this right even though the courts do not require Miranda warnings based on the theory that the implied consent proceeding is civil and no Fifth Amendment right attaches. USCA Const. Amend. 5; *Butler v. Com'r of Public Safety*, 348 N.W. 2d 827 (Minn. App. Ct. 1984). In *Butler*, the defendant was arrested for D.U.I. The police officer contacted the public defender for the defendant. The defendant talked with the public defender. The officer was not privy to that conversation, but apparently the attorney would not advise the driver whether to submit, although it was determined she did all she could under the circumstances. After the defendant was convicted, he appealed claiming he didn't get adequate counsel and the officer should have done more! The Court held that since the officer contacted the public defender, the defendant's right to counsel was vindicated notwithstanding that the public defender refused to advise the driver whether to submit to the blood-alcohol test.

The United States Supreme Court does not require Miranda warnings in an implied consent situation. *Rhode Island v. Innis*, 446 US 291, 301; 100 S.Ct. 1682, 1689; 64 L.Ed. 2d 297 (1980); *S.D. v. Neville*, supra. Also *State v. Gross*, supra.

Police words or actions normally attendant to arrest and custody do not constitute interrogation. The police inquiry here is highly regulated by statute, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic Miranda protection outside the basic Fifth Amendment protection. *Rhode Island v. Ennis*, supra cited in *S.D. v. Neville*, supra at n. 15.

Most of the states and the cases cited by defense counsel that

provide for some right to consult with counsel acknowledge that this is not an absolute right and that the driver's right to counsel cannot alter the driver's statutory obligations under the implied consent law. The cases speak in terms of "reasonable access," "no right to have counsel physically present," *State v. Staeheli*, 685 P.2d 591 (Wn. 1984); "no constitutionally guaranteed right to consult with counsel prior to taking blood test," *Dept. of Public Safety v. Gates*, 350 N.W.2d 59 (S.D. 1984); "statutory right . . . to consult with counsel before taking breathalyzer test is not an absolute but rather a limited one of reasonable time and opportunity, *Copelin v. State*, 659 P.2d 1206 (Alaska 1983); "as long as such attempted communication will not substantially interfere with the timely and efficacious administration of the testing process," *Rochin v. State*, 342 US 165, 96 L.Ed., 72 S.Ct. 205, 25 ALR2d 1396 (U.S. 1952). The Supreme Court of Arizona held that the defendant did not have the right to delay the taking of the test by demanding to consult with counsel. *McNutt v. Superior Court*, 648 P.2d 122, 125 n. 2 (Ariz. 1982).

The defendant cites *State v. Mears*, Case No. CR80-5443, Circuit Court, Ninth Judicial Circuit In and For Orange County Florida, per curiam affirmed, Case No. 81-612 (5th DCA 1982). The facts in *Mears* are easily distinguished. There the defendant was at the Municipal Justice Building in the breathalyzer testing room and his attorney was banging on the door trying to get in. Circuit Judge Cornelius held that the failure to provide defendant Mears with counsel prior to the administration of the breathalyzer test denied him of his right to the assistance of counsel at a *critical stage*. If a situation in which police behavior offends one's sense of justice could be conceived, this may be it. The *Mears* D.U.I. resulted in a death, however, and pursuant to Florida Statute 316.1933 (enacted after the *Mears* case), the defendant "shall submit to a test of his blood. . . . The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test." Consequently, under the law as it exists today, when a death is involved, it does not matter what the defense counsel advises.

A blood alcohol test which produces real, rather than testimonial or communicative evidence does not infringe upon any privilege against self incrimination. *State v. Curtis*, 680 P.2d 1383 (Idaho Ct. App. 1984). Fifth Amendment protections do not extend to the compulsory production of physical evidence. *Schmerber v. California*, 384 US 757, 16 L.Ed. 2d 908, 86 S.Ct. 1826 (1966), *S.D. v. Neville*, supra. The United States Supreme Court in *Schmerber* upheld the blood test taken in a D.U.I. saying:

9

1) taking blood did "not offend one's sense of justice"

2) the privilege against self incrimination protects one from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature—withdrawal of blood and use of analysis did not involve compulsion in these ends.

3) the protection against unreasonable search and seizure was satisfied because 2) "there was plainly probable cause" to arrest the defendant and to suggest the required relevance and likely success of a test of the defendant's blood for alcohol; b) the officer might reasonable believe he was confronted with an emergency in that delay necessary to obtain a warrant threatened the destruction of evidence; c) the test chosen was reasonable and was performed in a reasonable manner.

One point to be determined is whether a criminal defendant, faced with taking a breathalyzer test, is in a "critical stage." The Supreme Court has held that a post-indictment lineup was a critical stage but distinguished such a lineup—for 6th Amendment purposes—from various other preparatory steps, such as "systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like. In making this distinction the Court said:

"We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at the trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial."

But regarding the lineup or showup, the Court continued:

"the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness's courtroom identification."

See also *Powell v. Ala*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

A recent decision from the Maryland Court of Appeals held that the

stage at which the defendant must decide whether to submit to a breathalyzer is not a critical stage based on his Sixth Amendment right, but afforded a right to counsel based on the defendant's Fourteenth Amendment due process claim. *Sites v. State*, No. 148, 53 USLW 2171, Md. Ct. App., Oct. 9, 1984.

It has been previously ruled in this Circuit by the Honorable Cecil H. Brown sitting in his appellate capacity that the defendant is not entitled to consult with counsel prior to the taking of a breathalyzer test. *State v. Roche, et al.*, supra. The court in *Roche* adopted the language of *Holmberg v. 54-A Judicial District Judge*, supra in the following words:

> The breathalyzer test is a fast, safe way to provide at the least evidence of presumption as to whether a driver is under the influence by statutory definition. The attendant delays which may be involved by the process of seeking advice of counsel would not provide a realistic appraisal of a driver's condition because of the relative rapidity with which the body rids itself of alcohol.

Also in this Circuit in *State v. Hoff*, Case No. AP81-61, Apr. 7, 1983, the Honorable Ted Coleman sitting in his appellate capacity ruled that the defendant is not entitled to counsel prior to the taking of a breathalyzer.

Requiring the defendant to provide a breath sample is not an intrusion as to violate his Fourth Amendment right against unreasonable search and seizure. *Schmerber v. California*, supra; *U.S. v. Wade*, supra. In *Newman v. Stinson*, 489 S.W. 2d 826 (Ky. App. Ct. 1972) the Kentucky Court of Appeals held that there is no Fifth Amendment violation when breath samples are taken for analysis because these tests are searches for evidence rather than a compulsion of testimony. (See also *Newman v. Hacker*, 530 S.W. 2d 376 (Ky. App. 1975); *S.D. v. Neville*, supra.

The Alaska Court of Appeals last year, not willing to concede that a breathalyzer examination is a search, said that even if the breathalyzer exam is a search, if the exaination is conducted in compliance with the implied consent laws, it is incident to arrest and is therefore a reasonable search under the Constitution. *Burnett v. Municipality of Anchorage*, 678 P.2d 1364 (Alaska Ct. App. 1984).

The defendant's ability to reconstruct at trial any unfairness attendant to his refusal to submit or his submission to the breathalyzer is not hampered in that an exact reproduction of that event is available through the video tape for counsel and the court to review to determine whether the procedure complied with all requirements and rights

11

inuring to the defendant and to determine the propriety of that procedure.

The Supreme Court of Maine in *State v. Bellino*, 390 A.2d 1014, 1021 (Me. 1978) and *State v. Jones*, 457 A.2d 1116 (Me. 1983) ruled that the defendant has no right to counsel when the breathalyzer is given. In referring to the implied consent statute under which they operate (which is similar to Florida's), the Court stated:

> The statute's emphasis has never been on protection of the individual driver. Indeed with each set of amendments any existing protection has declined. . . . We find no requirement, constitutional or statutory for such access to counsel. In the fact of the legislative mandate, we are unwilling to supply the requirement by Court rule.

The right to counsel as provided in Florida Statutes 901.24 states:

> "A person arrested shall be allowed to consult with any attorney entitled to practice in this state, *alone* or *in private* at the *place of custody*, as *often* and for such periods of time as is *reasonable*." [emphasis added]

The defendant in the instant case is under arrest for D.U.I.; he is taken to the Batmobile, which has no phone (although at some of their locations there is a pay phone nearby); the effects of the alcohol are decreasing constantly; the breathalyzer operator must observe him for 20 minutes prior to taking a breath sample; and several defendants may be at the Batmobile at one time.

If each defendant is permitted to be "alone or in private" with his counsel as "often" and for such periods as he would choose, not only would this create a serious security risk, but the entire procedure would be invalidated. Further attempting to take a defendant to a phone, particularly an arrestee who already is hampered by the alcohol, may create a danger of his being injured. That is not "reasonable". Florida Statutes 901.24 obviously contemplates a defendant in jail or other secure location with no degree of urgency as exists in the case of a D.U.I. arrestee. The best and most relevant evidence is, of course, obtained as close to the time of the driving as possible. To allow unreasonable delays and unnecessary security risks would vitiate the procedure altogether.

Florida Rules of Criminal Procedure 3.111(a) further provides:

> "A person entitled to appointment of counsel as provided herein, shall have counsel appointed when he is formally charged with an offense, or as soon as feasible after custodial restraint or upon his first appearance before a committing magistrate, whichever occurs earliest."

12

The Rule further specifies what the court must do prior to appointing the public defender, which implies the court will be involved in this process. Such a requirement at the Batmobile is not reasonable or feasible. The Rule further specifies the duty of the booking officer. Obviously at the Batmobile the defendant has not even reached the booking office.

The defendant in the instant case argues that the Trooper did not accurately state the law to the defendant when he explained the implied consent law in his own words. The defendant claims that the Trooper failed to inform the defendant that he had the right to a hearing to determine if his was a lawful refusal and that he may have the right to a "Business Purpose Only" license. This court finds this argument to be without merit. Even the implied consent warning read from the script does not provide that information. The warning provided was accurate and sufficient. In *S.D. v. Neville*, supra the officers failed to warn the defendant that the test results could be used against him at trial. The Supreme Court stated: "but we think it unrealistic to say that the warnings given here implicitly assure a suspect that no consequences other than those mentioned will occur. Importantly, the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences."

As a practical matter, the people who will have an attorney to call will be the recidivists or professionals who retain a corporate or civil attorney for their business. Most often the decision of whether to submit to a blood alcohol test is outside the civil attorney's realm of expertise; consequently, the value of his advice is limited.

In Orange County, for those arrestees who are indigent, the public defender's office will not become involved in the standard D.U.I. arrest. Although there is a public defender on emergency duty, the after-hours calls are taken by an answering service. The answering service is instructed to contact the public defender on duty on serious cases and only for emergencies. Since a public defender's office will not have been appointed at this point in the proceedings and the public defender's office has made a determination that circumstances of a standard D.U.I. arrest are not serious enough nor exigent enough to warrant their becoming involved, the indigent defendant will not have access to counsel anyway.

Lastly, installation of a mobile phone in the Batmobile may well create radio wave interference with the testing equipment thus invalidating the results of the test.

13

It is therefore

ORDERED AND ADJUDGED that the practice of denying the defendant an opportunity to consult with counsel at the Batmobile does not violate any of his constitutional rights. Further, *if* in the interest of fairness, the defendant had a reasonable expectation that he should be permitted to consult with counsel prior to deciding to submit to a blood-alcohol test, the circumstances inherent in the Batmobile do not make this a reasonable or viable practice. Defendant's Motion to Suppress Breathalyzer Test and Breathalyzer Results is DENIED.