## LICHON v AMERICAN UNIVERSAL INSURANCE COMPANY

Docket No. 84935. Argued March 6, 1990 (Calendar No. 3). Decided July 30, 1990. Rehearing denied *post,* 1243.

Dennis S. Lichon brought an action in the Saginaw Circuit Court against American Universal Insurance Company, insurer of his store, seeking under the terms of the policy to recover losses sustained in two fires. The parties agreed to a settlement, but before payment was made the plaintiff was charged with setting both fires. After Lichon entered a plea of nolo contendere to a lesser charge of attempted burning of real property in a separate criminal action, the court in the civil action, Leopold P. Borrello, J., granted summary disposition for the defendant under MCR 2.116(C)(10), holding that the plaintiff was estopped under principles of equity from disclaiming responsibility for the fires in the civil action because of his plea in the criminal proceeding. The Court of Appeals, DANHOF, C.J., and D. R. FREEMAN, J. (SAWYER, J., dissenting), affirmed (Docket No. 104078). The plaintiff appeals.

In an opinion by Justice ARCHER, joined by Justices LEVIN, BRICKLEY, and CAVANAGH, the Supreme Court *held:*

Neither a plea of nolo contendere nor a conviction based on such a plea prevents the person who entered the plea from disclaiming liability in subsequent civil litigation regardless of whether the person who entered the plea is the plaintiff or the defendant. In this case, the insurer still may prove by other means that the insured had some part in starting the fires.

1. A person who owns and participates in the burning of insured property is not entitled to collect the insurance proceeds both because of exclusionary language contained in standard policies and on public policy grounds. However, in an action to recover such proceeds where the issue of the owner's arson is raised, the court must determine that the owner in fact participated in the arson. A defendant's motion for summary disposition under MCR 2.116(C)(10) tests the factual

REFERENCES

Am Jur 2d, Evidence §§ 334, 985.

See the Index to Annotations under Evidence Rules; Prior Offenses and Convictions.

sufficiency of the plaintiff's claim. A trial court cannot grant the motion unless it is impossible to support the plaintiff's claim at trial because of some deficiency that cannot be overcome. In this case, the trial court erred. The plaintiff's denial of responsibility raised a genuine issue of material fact precluding summary disposition under MCR 2.116(C)(10). He was not estopped from disclaiming any role in setting the fires.

2. A nolo contendere plea to a charge of attempted burning of real property is not an admission of guilt that can be used in subsequent civil or criminal litigation against the pleader. Rather, it merely communicates to the court that the criminal defendant does not wish to contest the state's accusations and will acquiesce in the imposition of punishment. To the extent a nolo contendere plea is an implicit admission of guilt, it is only for the purposes of the criminal proceeding in which the plea is entered. Both MRE 410 and 803(22) indicate that nolo contendere pleas are neither explicit nor implicit admissions of guilt that can be used against a pleader in subsequent litigation. The plaintiff's nolo contendere plea to the charge of attempted burning of real property in the criminal case admitted nothing in this case. Thus, the trial court erred in holding that the plea precluded the plaintiff from litigating the issue of his responsibility in causing the fires.

3. The defendant is barred by the doctrine of mutuality of estoppel from using the plaintiff's plea-based conviction to estop the plaintiff's claim. The defendant was not a party or a privy to a party in the criminal action. In addition, the taking of the plaintiff's nolo contendere plea cannot be considered actual litigation in terms of collateral estoppel jurisprudence.

4. The preclusion of the substantive use of a plea of nolo contendere in a subsequent litigation is irrespective of whether the pleader is a plaintiff or a defendant. The qualification of admission is not based on the type of proceeding in which evidence of the plea is offered, but on the purpose for which it is offered. In this case, preventing the defendant from using the plaintiff's plea to conclusively establish an affirmative defense is not the equivalent of granting judgment for the plaintiff. The defendant still may prove by means of other evidence that the plaintiff had some part in starting the fires.

Reversed and remanded.

Justice GRIFFIN, joined by Chief Justice RILEY, dissenting, stated that the preclusion in MRE 410 of the use of pleas of nolo contendere was not intended to make it easier for an owner of a business who plead nolo contendere to a charge of attempted arson of the place of business to recover fire insur-

ance proceeds in a civil action. Where a subsequent civil action is based upon the same incident or transaction as was involved in an earlier criminal proceeding, evidence of a plea of nolo contendere is clearly relevant as convincing evidence of guilt. Exclusionary rules such as MRE 410 which make relevant evidence inadmissible should be drawn narrowly and strictly construed, and applied only when the exclusion of relevant evidence will serve an overriding public interest. While a public interest can be identified which provides some justification for the existence of nolo contendere pleas, it is not so overriding and paramount as to compel a strained construction of MRE 410 that aids a criminal defendant who seeks to profit from a crime.

The major concession extended under MRE 410 to persons who plead nolo contendere is protection from the use of the pleas in civil proceedings brought against them for liability for damages arising out of the criminal activities of which they were convicted. The protection was not intended to apply in cases brought by convicted felons who seek to profit from their crimes. Neither the policy justifications underlying MRE 410 nor its plain language justifies the majority's expansive interpretation which turns the rule into an offensive weapon for a person who has been convicted of a serious crime.

Justice Boyle concurred only in the result reached by Justice Griffin.

173 Mich App 178; 433 NW2d 394 (1988) reversed.

Evidence — Nolo Contendere Pleas — Subsequent Litigation.

Neither a plea of nolo contendere nor a conviction based on such a plea prevents the person who entered the plea from disclaiming liability in subsequent civil litigation regardless of whether the person who entered the plea is the plaintiff or the defendant (MRE 410, 803[22]).

*Joseph J. Trogan* for the plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Gregory E. Meter* and *Scott C. Strattard*) for the defendant.

Amicus Curiae:

*Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C.* (by *Susan Tukel*), for the Association of Defense Trial Counsel.

ARCHER, J. The question presented is whether the trial court properly granted defendant's motion for summary judgment because plaintiff's previous nolo contendere plea to attempted burning of real property terminated any rights plaintiff had under his policy of insurance with defendant company.

I

The plaintiff, Dennis Lichon, was the proprietor of Denny's Party Store in Saginaw, Michigan. The defendant, American Universal Insurance Company, insured Lichon's business against the risk of fire loss. The building housing Denny's Party Store caught fire in December, 1984, resulting in partial damage to the business. In January, 1985, as Denny's was preparing to reopen, a second fire destroyed the entire building, causing the total loss of the business.

Lichon filed claims for the fire damage. When nearly a year had passed without a positive response from the insurance company, he filed this suit, seeking to recover his losses under the terms of his insurance policy. Within seven months after the suit was filed, the parties were able to come to a settlement agreement. Approximately five weeks later, but before American Universal paid the agreed sum, Lichon was charged with burning real property, MCL 750.73; MSA 28.268. The state accused Mr. Lichon of setting both fires.

Lichon eventually entered a plea of nolo contendere to the lesser charge of attempted burning of real property. He was convicted and sentenced to one year in the county jail.

In this civil action, American Universal filed a motion for summary disposition under MCR

2.116(C)(7)[1] and (10),[2] contending that Lichon's nolo contendere plea and conviction prevented him from recovering on the insurance contract. The insurance company argued that Lichon was barred from recovery under the contract's antifraud exclusionary clause.[3] The company argued that it was entitled to judgment as a matter of law. American Universal argued that it was entitled to judgment under MCR 2.116(C)(7), because Lichon was collaterally estopped by his conviction from disputing his role in setting the fires, and under MCR 2.116(C)(10) because principles of equity estopped Lichon from raising any issue of fact regarding his role in the arson. American Universal argued that Lichon was unable to rebut its affirmative defense of arson.

The circuit court granted defendant's motion under MCR 2.116(C)(10) and entered judgment in

---

[1]   The claim is barred because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action.

[2]   Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.

[3] This clause stated:

    Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured . . . .

The policy also stated,

    This Company shall not be liable for loss: . . . (4) caused by pilferage, appropriation or concealment of any property covered or any fraudulent, dishonest or criminal act done by or at the instigation of any insured, partner or joint venture, including any officer, director, trustee, employee or agent thereof, or any person to whom the property covered may be entrusted . . . .

its favor. The Court of Appeals affirmed.[4] We granted leave to appeal[5] and we hereby reverse.

II

We begin our analysis by acknowledging a fundamental principle which presents the background for this case: A wrongdoer should never profit from crime. *Budwit v Herr,* 339 Mich 265; 63 NW2d 841 (1954). It is axiomatic that a person who owns insured property and causes it to burn is not entitled to collect the insurance proceeds. See also *Walz v Peninsular Fire Ins Co,* 221 Mich 326; 191 NW 230 (1922); *Eagle, Star & British Dominions Ins Co v Heller,* 149 Va 82, 111; 140 SE 314 (1927).

This axiom holds true for two reasons. First, the language of standard business insurance policies, including the policy of insurance issued on Mr. Lichon's property, prevents recovery for damages caused by an insured's criminal acts.[6]

Second, it is untenable on public policy grounds to allow a person to profit from such a fraud. As the Supreme Court of Virginia in *Eagle, Star, supra,* p 111, so eloquently stated:

> To permit a recovery under a policy of fire insurance by one who has been convicted of burning the property insured, would be to disregard the contract, be illogical, would discredit the administration of justice, defy public policy and shock the most unenlightened conscience. To sustain such a judgment would be to encourage and give support to the current thoughtless and carping criticism of legal procedure, and to justify the gibe that the administration of the law is the only remaining legalized lottery.

[4] 173 Mich App 178; 433 NW2d 394 (1988).

[5] 433 Mich 894 (1989).

[6] See n 3.

To say that an arsonist should not profit from his crime, however, does not answer the question at the heart of this case, the question how a court may properly determine that a litigant is, in fact, an arsonist.

Under review is the trial court's order granting American Universal's motion for summary judgment under MCR 2.116(C)(10). A motion for summary disposition under that court rule tests the factual sufficiency of the plaintiff's claim. The trial court cannot grant the defendant's motion unless it is impossible to support the plaintiff's claim at trial because of some deficiency that cannot be overcome. See *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973).

The trial court granted judgment for American Universal, stating "that the theory of equitable estoppel should be applied in this case." The trial court held that Lichon was equitably estopped from disclaiming responsibility for the fires that burned his store because he pled nolo contendere to attempted burning of real property. In effect, the court reasoned that, since Lichon was estopped by his plea and conviction from disclaiming responsibility for the fires, he would be unable to present any facts at trial that would overcome American Universal's affirmative defense. The court further supported its holding on the public policy grounds that one should not profit from wrongdoing.

Our review of this case requires us to determine whether the trial court was correct in ruling that Lichon was unable, because of his nolo contendere plea and conviction, to raise a question of material fact regarding his role in setting the fires that burned his business. The trial court was correct only if Lichon is estopped, either by general principles of equity or principles of collateral estoppel,

from denying responsibility for the fires after his nolo contendere plea and conviction.

We hold that the trial court erred. We do not believe Lichon was estopped from disclaiming any role in setting the fires. Neither do we believe that Lichon's nolo contendere plea-based conviction collaterally estopped him from presenting evidence at trial in an attempt to disprove his responsibility in starting the fires. His denial of responsibility, therefore, raises a genuine issue of material fact precluding summary disposition under MCR 2.116(C)(10).

### III

The plaintiff is not precluded from litigating the issue whether he burned his business because his nolo contendere plea to a charge of attempted burning of real property is not an admission of guilt that can be used against him in subsequent civil or criminal litigation.

### A

Equitable estoppel " 'arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.' " *Fleckenstein v Citizens Mutual Automobile Ins Co,* 326 Mich 591, 599-600; 40 NW2d 733 (1950). Therefore, Lichon is estopped from denying he set the fires only if he explicitly or tacitly, intentionally or negligently, admitted his guilt in such a way as to induce his insurance company's justified and detrimental reliance.

This case does not present a situation where the doctrine of "equitable estoppel," strictly defined, applies. American Universal did not detrimentally rely upon Lichon's nolo contendere plea in such a way that principles of equitable estoppel would prevent Lichon from contesting his responsibility for setting the fires that destroyed his business. Equitable estoppel enables a party to avoid litigating, in a second proceeding, claims which are plainly inconsistent with those litigated in a prior proceeding. However, "[b]ecause the doctrine is intended to ensure fair dealing between the parties, the courts will apply the doctrine only if the party asserting the estoppel was a party in the prior proceeding and if that party has detrimentally relied upon his opponent's prior position." *Edwards v Aetna Life Ins Co*, 690 F2d 595, 598 (CA 6, 1982). See also *Davis v Wakelee*, 156 US 680, 689; 15 S Ct 555; 39 L Ed 578 (1895). Because American Universal was not a party to Lichon's criminal prosecution, it cannot rely on the doctrine of equitable estoppel.

It is possible that the trial court intended to rely, not on "equitable estoppel," but on the doctrine of "judicial estoppel" or estoppel by pleading. Under this doctrine, a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. *Edwards, supra* at 598.

Under the doctrine of judicial estoppel, Lichon is prevented from denying responsibility in setting the fires in this civil trial only if such a position is inconsistent with the position he adopted in his criminal case. In other words, he would be judicially estopped in the civil trial from asserting his innocence in burning his business if such a position is inconsistent with his earlier plea of nolo

contendere. The two claims are inconsistent only if we interpret the nolo contendere plea as an admission of guilt that can be held against Lichon in this subsequent litigation. However, the very nature of a nolo contendere plea, as it has been defined by the courts and in the Rules of Evidence, dictates that the plea cannot be held against the plaintiff as an admission of responsibility in subsequent litigation. Therefore, Lichon is not judicially estopped from contesting his responsibility.

B

Until recently, Michigan law did not recognize the plea of nolo contendere. See, e.g., *People v Franchi,* 3 Mich App 511; 142 NW2d 881 (1966). By 1969 PA 334, the Legislature amended MCL 767.37; MSA 28.977 to recognize the authority of the courts to accept pleas of nolo contendere. This statute, however, does not define the nature of the plea, its evidentiary value, or operative effect in subsequent litigation. To determine these, therefore, we must look to our Rules of Evidence and the common law.

The primary purpose of a plea of nolo contendere is to avoid potential future repercussions which would be caused by the admission of liability, particularly the repercussions in potential future civil litigation. *Guilty Plea Cases,* 395 Mich 96, 134; 235 NW2d 132 (1975), cert den 429 US 1108 (1977). A nolo contendere plea does not admit guilt, it merely communicates to the court that the criminal defendant does not wish to contest the state's accusations and will acquiesce in the imposition of punishment.[7] To the extent a nolo contendere plea is an implicit admission of guilt, it is

---

[7] Nolo contendere is a Latin phrase meaning "I will not contest it." Black's Law Dictionary (5th ed), p 945.

such an admission only for the purposes of the criminal proceeding in which the plea is entered. Thus, Lichon's plea acts as an admission to the circuit court only that he attempted to burn his business.

Under Michigan Rules of Evidence 410 and 803(22), the trial court erred when it considered Lichon's nolo contendere plea as judicially estopping him from contesting responsibility for the fires. These rules indicate that nolo contendere pleas are neither explicit nor implicit admissions of guilt that can be used against a pleader in subsequent litigation. MRE 410 states:

> Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, *is not admissible* in any civil or criminal proceeding against the person who made the plea or offer. [Emphasis added.]

MRE 803(22) states that, in terms of the evidence rules regarding hearsay, evidence that is not excluded, even where the declarant is available as a witness, is

> [e]vidence of a final judgment, entered after a trial or upon a plea of guilty (*but not upon a plea of nolo contendere*), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the state in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility. [Emphasis added.]

Rule 410, therefore, prevents the trial court from giving estoppel effect to Lichon's nolo contendere plea, since such pleas are "not admissible in any civil or criminal proceeding against the person who made the plea . . . ." Rule 803(22) likewise prevents the court from treating Lichon's conviction based on the nolo contendere plea as substantive evidence of his role in starting the fires.[8]

The advisory committee notes accompanying each of the federal counterparts to these rules illustrate why the plaintiff's nolo contendere plea does not estop him from litigating his responsibility for setting the fires. The notes accompanying FRE 803(22) indicate that, notwithstanding the hearsay rule, FRE 803(22) allows the admission of criminal convictions as substantive, *but not preclusive,* evidence in subsequent litigation. The note is careful to mention, however, that judgments of conviction based upon pleas of nolo contendere are inadmissible to prove the fact of a party's guilt of the crime of which that party was convicted. "This position is consistent with the treatment of nolo pleas in Rule 410 . . . ." Advisory Committee Notes to FRE 803(22).

The notes accompanying FRE 410 state:

Pleas of nolo contendere are recognized by Rule 11 of the [Federal] Rules of Criminal Procedure, although the law of numerous States is to the

[8] Here we are dealing with the "equitable estoppel" effect the court gave to the conviction. As is illustrated by the advisory committee notes to FRE 803(22), this rule of evidence does not determine the collateral estoppel or res judicata effect to which such a judgment may be entitled. For a discussion of that issue, see § III of this opinion. Under rules 801 and 803(22), American Universal is precluded from asserting that Lichon's plea-based conviction establishes the truth of its charge that Lichon played a role in starting the fires. Therefore, as an equitable matter, the fact of Lichon's conviction cannot estop him from contesting American Universal's assertion. To hold otherwise would require us to ignore the language and previous interpretations of rules 410 and 803(22).

contrary. The present rule gives effect to the principal traditional characteristic of the nolo plea, i.e., avoiding the admission of guilt which is inherent in pleas of guilty. This position is consistent with the construction of Section 5 of the Clayton Act, 15 USC 16(a), recognizing the inconclusive and compromise nature of judgments based on nolo pleas. . . .

Exclusion of offers to plead guilty or nolo has as its purpose the promotion of disposition of criminal cases by compromise.

The policies behind the recognition of the plea of nolo contendere indicate the reasons why such a plea does not preclude a party from denying culpability in subsequent litigation. First, MRE 410 and 803(22) recognize that a plea of nolo contendere does not of necessity establish a party's guilt because of the "inconclusive and compromise nature of judgments based on nolo pleas." Advisory committee notes to FRE 410. These rules recognize that there are some situations in which a criminal defendant will find it preferable to accept a light punishment offered by the prosecution in exchange for a nolo contendere plea, rather than to face far worse consequences both in terms of criminal punishment and civil liability.[9] Second, and more importantly, by allowing a criminal defendant to enter a plea that is not admissible against him in a future criminal or civil action, the court rules and the Rules of Evidence facilitate plea bargaining and the concomitant speedy resolution of criminal cases. See advisory committee notes to FRE 410. These policies are as applicable in situations where the individual who pleas nolo contendere is

---

[9] The dissent ignores this basis of MRE 410 in its discussion, *post,* pp 439-440, of the rationale supporting the rule.

a plaintiff in subsequent litigation as in those where that person is a defendant.[10]

The United States Court of Appeals for the Fifth Circuit in *United States v Williams,* 642 F2d 136, 139 (CA 5, 1981), accurately summed up the definition and effect of a nolo contendere plea when it stated:

> A plea of *nolo contendere* performs a specific function. As a statement of the defendant for which he may, in another proceeding or on another occasion be called upon to account, it admits nothing. It is the same as a plea of not guilty.

The ABA Project on Standards for Criminal Justice, *Pleas of Guilty* (Approved Draft 1968), § 1.1(a), pp 14-15, which we cited in *State Bar Grievance Administrator v Lewis,* 389 Mich 668, 679; 209 NW2d 203 (1973), states:

> "Although some minor variations are to be found from jurisdiction to jurisdiction, in most states the nolo plea has the following significance: (1) *Unlike the plea of guilty, a plea of nolo contendere may not be put into evidence in a subsequent civil action as proof of the fact that the defendant committed the offense to which he entered the plea.*" [Emphasis added.]

[10] Noting that, historically, criminal convictions are inadmissible as substantive evidence in civil trials, the dissent tries to distinguish between the effect given nolo contendere pleas in civil proceedings brought against the convicted party, and those brought by that party, claiming that such a distinction is "not new to the law." *Post,* p 440. The dissent is correct that some courts and commentators have noted such a distinction, but this Court has not yet done so. Rather, this Court has prohibited the substantive use of criminal convictions in civil proceedings where the convicted parties were plaintiffs as well as where they were defendants. See *Day v Gold Star Dairy,* 307 Mich 383; 12 NW2d 5 (1943), and *Wheelock v Eyl,* 393 Mich 74; 223 NW2d 276 (1974).

As the author of "one leading text" relied upon by the dissent[11] stated:

> It has long been established in the federal courts that the plea of *nolo contendere* "does not create an estoppel, but . . . is an admission [of guilt] for the purposes of the case" in which the plea is made. In any subsequent action, whether arising out of the same facts or not, neither the *nolo* plea nor the conviction based on the plea may be admitted as either an admission or proof of guilt. [2 Weinstein & Berger, Evidence, ¶ 410[06], pp 410-44 to 410-45. Citing *Hudson v United States,* 272 US 451, 455; 47 S Ct 127; 71 L Ed 347 (1926).]

We agree that the plaintiff's nolo contendere plea to the charge of attempted burning of real property admitted nothing in this proceeding. The trial court erred by holding that this plea precluded Lichon from litigating the issue of his responsibility in causing the fires.

Our holding is further supported by the recent Court of Appeals decision in *Ramon v Farm Bureau Ins Co,* 184 Mich App 54; 457 NW2d 90 (1990). The *Ramon* panel specifically adopted the "well-reasoned dissent" of Judge SAWYER in this case, 173 Mich App 182. *Ramon* rejected the analysis of the Court of Appeals panel presently under review, stating that "[a]llowing a trial court to use a nolo contendere plea in deciding a motion for summary disposition in a related civil action renders use of this plea in a criminal proceeding meaningless." *Id.* at 60.

C

We recognize the force of the arguments made by the Court of Appeals and the dissent that

---

[11] *Post,* pp 438-439.

public policy should prohibit a party from relying on a nolo contendere plea in a case where that party is a plaintiff. However, neither MRE 410 nor MRE 803(22) makes such a distinction. We read MRE 410 to mean that a plea of nolo contendere may not be introduced against the party who entered that plea, irrespective of whether that party is a plaintiff or a defendant in subsequent litigation.

The language of MRE 410 states that a nolo contendere plea is not admissible "in any civil or criminal proceeding against the person who made the plea . . . ." The dissent argues that the word "against" modifies the word "proceeding" and not the word "person," thus indicating that nolo contendere pleas are admissible in proceedings brought "by" the pleader. While this novel interpretation is not directly contradicted by the language of the rule, we are unpersuaded that this interpretation is correct. Our interpretation is supported by the history of the federal rule, the language of which was altered in 1980 in order to foreclose the sort of interpretation as that offered by the defendant.[12] The advisory committee notes accompanying this amendment state:

"The phrase 'in any civil or criminal proceeding' has been moved from its present position, following the word 'against,' for purposes of clarity. An ambiguity presently exists because the word

[12] The preamendment version of FRE 410 stated, in the same language as current MRE 410, "a plea of nolo contendere . . . is not admissible in any civil or criminal . . . proceeding against the person who made the plea . . . ." As amended, FRE 410 states:

[E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea . . . .
 (2) a plea of nolo contendere . . . .

'against' may be read as referring either to the kind of proceeding in which the evidence is offered or the purpose for which it is offered. *The change makes it clear that the later construction is correct.*" [Saltzburg & Redden, Federal Rules of Evidence Manual (3d ed), Rule 410, Advisory Committee Notes, p 211. Emphasis added.]

The advisory committee notes thus make it clear that the original language of FRE 410 was not intended to qualify the admission of a nolo contendere plea upon the type of proceeding in which it is offered, but, rather, on the purpose for which that evidence is offered. Because the language of Michigan's rule is taken directly from the federal rule, we are persuaded by this interpretation.[13]

The dissent's reading of the rule would also lead to nonsensical results. The policies advanced by the dissent in support of its reading are not promoted by conditioning admissibility of nolo contendere pleas on whether the pleader is a plaintiff or a defendant in a subsequent proceeding. Take, for example, a situation where an insurer pays its insured for fire damages and the insured later pleads nolo contendere to a charge of burning the insured property. If the insurer then sued for

---

[13] We decline to follow *Walker v Schaeffer*, 854 F2d 138 (CA 6, 1988) on this point. The United States Court of Appeals for the Sixth Circuit ignores language in the advisory committee note accompanying the 1980 amendment of FRE 410, clarifying that the rule is applicable regardless of the nature of the proceeding. Furthermore, we believe the Sixth Circuit is incorrect in its assertion that a nolo contendere plea should be treated as an admission. 854 F2d 143. See *Powell v King*, 33 Mich App 41; 189 NW2d 746 (1971) (opinion of LEVIN, J., concurring); 29 Am Jur 2d, Evidence, § 702, p 760.

As stated in McCormick, Evidence (3d ed), § 265, p 783:

Pleas of *nolo contendere* or *non vult,* in jurisdictions where allowed, are generally regarded as inadmissible [as admissions], and in fact that attribute is a principal reason for their employment.

restitution of the policy proceeds, that action would be a "proceeding against" the insured. Under the dissent's analysis, MRE 410 would prevent the insurer from using the insured's plea against the insured. However, the use to which the insurer wishes to put the plea is indistinguishable from the use the trial court made of Lichon's plea. Restricting the application of MRE 410 to cases in which a nolo contendere pleader is a defendant would lead to anomalous results. The distinction the dissent makes is a distinction based on the use a party makes of a nolo contendere plea, not on the status of the pleader in subsequent litigation. The language of MRE 410, however, does not make such a distinction.

Furthermore, if MRE 410 is applied as the dissent suggests it would certainly have to be applied in cases in which civil plaintiffs made and later withdrew guilty pleas or offered guilty pleas which were rejected. For instance, if, instead of pleading nolo contendere, Lichon made an offer to plead guilty that the prosecutor rejected and Lichon was acquitted after a trial, his plea offer would be admissible under the dissent's interpretation. Surely, that result is not intended by MRE 410, though the rule's language, given the dissent's reading, would dictate it.

We agree with the dissenting Judge SAWYER's argument in the Court of Appeals that the trial court was incorrect in stating that Lichon used his plea here as a "sword" rather than as a "shield." 173 Mich App 178, 183; 433 NW2d 394 (1988). American Universal raised the issue of the nolo contendere plea and conviction as establishing conclusively its affirmative defense of arson. Lichon's reliance on MRE 410 in this litigation is in response to that affirmative defense. Lichon is not using his plea to prove American Universal's lia-

bility. He argues only that the nolo contendere plea may not be used against him to defeat his claim. Lichon is therefore still using rule 410 as a shield.

Preventing American Universal from asserting Lichon's nolo contendere plea as conclusively establishing an affirmative defense is not the equivalent of granting judgment for Lichon on the basis of the plea. American Universal has ample opportunity at trial to prove, through evidence other than Lichon's plea, that Lichon had some part in starting the fires.

We further note that the stated policies behind MRE 410 and 803(22) dictate their application in all proceedings, whether the individual who pled nolo contendere in the earlier criminal case is subsequently a plaintiff or a defendant. It is possible that public policy might supersede these interests. The public interest might be served better by a rule that prevents an individual who pled nolo contendere to criminal charges from excluding evidence of that plea in an action in which the pleader seeks to establish some entitlement arising out of the crime of which the pleader was convicted. Such a rule, however, would be different from current rules 410 and 803(22), because it would not involve withdrawn pleas or rejected offers to plead, it would require different language, and it would be based on different considerations. Such a change in the law would be more properly accomplished through our administrative powers to amend the Rules of Evidence, because the administrative process gives us greater opportunity to deliberate the effects of such a change and to gather input from the public, the bench, and the bar.

IV

Defendant urges that, even if plaintiff's *plea*

does not bar his recovery in this action, the *conviction* based on that plea does. Although the trial court did not specifically base its decision on a collateral estoppel theory, it did note in its written opinion, "Plaintiff cannot be allowed to deny in this case what he has been convicted of in a criminal case based on the same events as in the case at bar." We disagree.[14]

American Universal's claim relies on principles of issue preclusion, an aspect of collateral estoppel. The insurance company contends that Lichon's culpability for setting the fires was determined by the judgment of conviction in the criminal action brought against plaintiff. That issue being determined, American Universal argues, Lichon is precluded from relitigating it. American Universal's argument fails, however, because it ignores two elements of collateral estoppel doctrine: the requirement that there be mutuality of estoppel and that the issue foreclosed actually be litigated.

The doctrine of mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must also have been a party, or a privy to a party, in the previous action. In other words, " '[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it

---

[14] Summary judgment on the basis of collateral estoppel is properly granted under MCR 2.116(C)(7), not the court rule under which the trial court ruled here, MCR 2.116(C)(10). American Universal moved for summary disposition under both court rules, however, and discussed collateral estoppel in its brief to the trial court in support of its motion. Despite the statement by the trial court that it was granting judgment under MCR 2.116(C)(10) and its use of the term "equitable estoppel" and not "collateral estoppel," we will treat collateral estoppel as an alternative ground for the court's decision. It is the substance of the order, rather than its label, that should steer our review. See *Warvel v Michigan Community Blood Center,* 74 Mich App 440; 253 NW2d 791 (1977).

gone against him.' " See *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 43; 191 NW2d 313 (1971). Although there is a trend in modern law to abolish the requirement of mutuality,[15] this Court reaffirmed its commitment to that doctrine in 1971 in *Howell.* Mutuality of estoppel remains the law in this jurisdiction and bars American Universal from using Lichon's criminal conviction to settle an issue in this civil case, since the insurance company was not a party to the criminal case and would not have been bound by an acquittal had one resulted.[16]

Collateral estoppel is also unavailable to American Universal because the issue whether plaintiff set the fires was never actually litigated. Under 1 Restatement Judgments, 2d, § 27, p 250, collateral estoppel applies "[w]hen an issue of fact or law is *actually litigated* and determined by a valid and final judgment . . . ." (Emphasis added.) Comment e to this section clarifies this rule: "A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action." *Id.,* p 256. See

[15] See *Howell* at 46.

[16] We note that lack of mutuality does not always preclude the application of collateral estoppel. There are several well-established exceptions to the mutuality requirement, such as when an indemnitor seeks to assert in its defense a judgment in favor of its indemnitee, or where a master defends by asserting a judgment for a servant. See *Braxton v Litchalk,* 55 Mich App 708; 223 NW2d 316 (1974); *Darin & Armstrong v Ben Agree Co,* 88 Mich App 128; 276 NW2d 869 (1979), lv den 406 Mich 1007 (1979). The Court of Appeals has recognized that there may be other situations in which the mutuality requirement is relaxed. See *Knoblauch v Kenyon,* 163 Mich App 712; 415 NW2d 286 (1987). *Turbessi v Oliver Iron Mining Co,* 250 Mich 110; 229 NW 454 (1930), cited by the defendant, dealt with the issue of malicious prosecution and res judicata and did not discuss mutuality of estoppel. It is therefore insufficient authority for us to consider the mutuality requirement excused here. Ultimately, however, we refuse to follow defendant's suggestion that we ignore the absence of mutuality since we need not do so in deciding the case. Alternate grounds are adequate for reversal.

also *Stolaruk Corp v Dep't of Transportation,* 114 Mich App 357; 319 NW2d 581 (1982).

While 2 Restatement Judgments, 2d, § 85, favors granting preclusive effect to criminal convictions in subsequent civil proceedings, it specifically excepts nolo contendere pleas from this provision. Section 85(2)(a) states:

> (2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action:
> (a) Against the defendant in the criminal prosecution . . . . [2 Restatement Judgments, 2d, § 85(2)(a), p 294.][17]

However, comment b to this section clarifies:

> The rule of this Section presupposes that the issue in question was actually litigated in the criminal prosecution. . . . Accordingly, the rule of this Section does not apply where the criminal judgment was based on a plea of *nolo contendere* or a plea of guilty. A plea of *nolo contendere* by definition obviates actual adjudication and under prevailing interpretation is not an admission.

The taking of Lichon's nolo contendere plea cannot be considered "actual litigation," at least not in terms of collateral estoppel jurisprudence. The essence of a nolo contendere plea is in its name, "nolo contendere," or, "I will not contest it." If the charges are uncontested, they are necessarily unlitigated. Neither can we accurately say that the procedures followed by the judge in establishing a factual basis for taking a nolo contendere plea[18] constitute "actual litigation." We recognized this fact in the *Guilty Plea Cases, supra,* where we

---

[17] Cf. *Wheelock v Eyl,* n 10 *supra.*
[18] MCR 6.302.

quoted the dissenting opinion of Judge LEVIN in *People v Coates,* 32 Mich App 52, 70; 188 NW2d 265 (1971): " 'Direct questioning of the defendant is informative . . . [but it] does not mean that the judge must decide that the defendant is guilty before he agrees to accept the plea." 395 Mich 133, n 2. Justice WILLIAMS, in discussing the trial court's duty to determine the factual basis for a guilty plea stated "[s]uch examination is not the equivalent of a legal trial . . . ." *People v Taylor,* 387 Mich 209, 225-226; 195 NW2d 856 (1972). See also *People v Chilton,* 394 Mich 34; 228 NW2d 210 (1975). Comment e of 1 Restatement Judgments, 2d, § 27, p 257, further indicates that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated."

V

In *Imperial Kosher Catering v Travelers Indemnity Co,* 73 Mich App 543; 252 NW2d 509 (1977), the Court of Appeals affirmed a grant of summary disposition in favor of the defendant where the defendant established that the sole stockholders of the plaintiff corporation had been convicted by a jury of setting fire to the insured property. The primary distinction between *Imperial Catering* and the case at hand is the difference between a conviction based on a jury verdict and a conviction based on a nolo contendere plea. In the first instance, the issue of the insured's responsibility for setting the fire actually had been litigated; it was thus arguably appropriate to give the judgment preclusive effect. In this case, principles of collateral estoppel permit the plaintiff to contest defendant's claim that the plaintiff set the fire.

Were *Imperial Catering* applicable to this case, we would still decline to follow its reasoning.

While we make no comment today on the soundness of that case's result, we note the inadequacy of its reasoning in that it gives preclusive effect to a criminal conviction without regard to the absence of mutuality of estoppel. It may be appropriate to create an exception to the mutuality requirement in such a case, but only upon adequate reflection and after stating the explicit reasons for making a departure from settled legal principles.[19]

We express no opinion regarding whether a criminal conviction, based upon a jury verdict, may be given preclusive effect in a subsequent civil proceeding. See *Eagle, Star, supra.* We make no ruling as to the preclusive effect of a conviction based upon a guilty plea. Cf. *Wheelock v Eyl,* 393 Mich 74; 223 NW2d 276 (1974).[20] Neither do we disturb our holding in *State Bar Grievance Administrator v Lewis, supra.*[21] Furthermore, we express no opinion regarding whether Lichon's conviction would be admissible at trial for impeachment purposes.

We hold only that neither a plea of nolo contendere nor a conviction based thereon prevents the person who entered that plea from maintaining innocence in subsequent civil litigation regardless of whether the person who entered the plea is the plaintiff or the defendant in the subsequent litigation. When the plaintiff contested his responsibil-

[19] See *Danish Inn, Inc v Drake Ins Co of New York,* 126 Mich App 349, 353; 337 NW2d 63 (1983), which questioned *Imperial Catering* for, among other things, its "expansion of the doctrine of collateral estoppel . . . ."

[20] The question of the effect of a guilty plea and a conviction based thereon raises issues of both collateral estoppel and equitable estoppel. See 1 Restatement Judgments, 2d, § 27, comment e, pp 256-257.

[21] In *Lewis,* we noted that attorney discipline is based on the fact of conviction alone in the context of a disciplinary rule allowing suspension of license upon conviction, even a conviction after a nolo contendere plea. Here, the defendant seeks to establish the existence of plaintiff's specific wrongdoing through the fact of conviction. See also *Williams, supra.*

ity for setting fire to his business in his affidavit in opposition to the defendant's motion for summary judgment, he raised an issue of fact which precluded summary disposition under MCR 2.116(C)(10).

Naturally, nothing in this opinion precludes the defendant from establishing at trial the affirmative defense that the plaintiff intentionally burned his business. So long as defendant can prove this fact by a preponderance of the evidence, plaintiff will be precluded from recovery.

We reverse and remand this case to the trial court for a trial on the merits.

LEVIN, BRICKLEY, and CAVANAGH, JJ., concurred with ARCHER, J.

GRIFFIN, J. (*dissenting*). Today this Court places an interpretation on our own Rules of Evidence that will make it easier for an arsonist to collect on his fire insurance after he burns down his house or place of business. I cannot believe that those who adopted MRE 410 contemplated or intended such an outrageous result. Furthermore, the language they employed does not require it. I dissent.

I

Less than a month after one fire partially damaged the building in which Dennis Lichon's party store was located, a second fire completely destroyed it. Thereafter, Lichon sought unsuccessfully to collect for the loss from his insurance carrier. The policy does not provide coverage if "the hazard is increased by any means within the control or knowledge of the insured" or if the loss is "caused by . . . [any] criminal act done by or at the instigation of any insured . . . ."

Criminal charges were brought against Lichon.[1]
With respect to each of the fires, he was charged
with conspiracy to commit the crime of arson.[2]
On the day that his criminal trial was to begin,

[1] MCL 750.73; MSA 28.268.

[2] At Lichon's preliminary examination, two alleged co-conspirators testified. One of them, Dennis Poindexter, testified that Lichon asked him to find someone to burn the store. According to Poindexter, Lichon paid him $1,500 for the first, unsuccessful attempt, and then another $1,500 for the second attempt which resulted in total destruction of the store. Poindexter recounted that, after the first attempt, Lichon told him to " 'go back and burn it down. Burn the whole damn thing down.' " Significantly, Poindexter's testimony also related to Lichon's purpose to collect on his fire insurance policy:

*Q.* Did he give you any reason for going back and doing it again?
*A.* Money.
*Q.* Okay. Did he just say money or did he say anything else?
*A.* Just tired of the store. Too much [sic] problems, too much hassle. Losin' money.
*Q.* Did he ever discuss with you anything about insurance?
*A.* Later.
*Q.* Okay. During that same conversation?
*A.* Same conversation was that he had lost on just the fire damage on it the second time. He just lost money.
*Q.* Okay.
*A.* The third conversation, the whole damn thing goes, he can collect all of his money.
*Q.* Okay. When he said he could collect all of his money, did he ever discuss insurance money with you?
*A.* Yes.
*Q.* Okay. Do you remember how he discussed that with you? The words that were used?
*A.* Well, Hundred Thousand Dollars, so, acceptin' Seventy-Five Grand was a loss to him.

The other alleged co-conspirator, Nolan Pinkston, testified that Poindexter paid him to actually burn the store. Pinkston also said he overheard a conversation between Lichon and Poindexter on the night of the second fire which destroyed the party store:

*Q.* Okay. What else did you hear Denny Lichon say out at Dennis Poindexter's house that night?
*A.* That he wanted to get it burnt on down so he could get the insurance money for the whole thing. He didn't want the store no more.

Lichon reached an agreement with the prosecutor and pleaded nolo contendere to a lesser charge of attempted arson. He was convicted and sentenced to one year in the county jail.[3]

Notwithstanding his conviction and sentence, Lichon, as plaintiff in a civil suit, has continued the effort to collect on his fire insurance policy. However, the trial court granted a motion for summary disposition in favor of the defendant insurer, and explained:

> What a ludicrous result it would be if the law allowed a person to benefit financially from his own crime simply because he was allowed to enter a technical plea. Historically, the law has never allowed someone to benefit financially or otherwise from a criminal act, and I do not think we should start now. Plaintiff cannot be allowed to deny in this case what he has been convicted of in a criminal case based on the same events as in the case at bar.

The Court of Appeals affirmed, 173 Mich App 178; 433 NW2d 394 (1988); however, the panel divided concerning the construction to be given MRE 410, which provides:

> Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal *proceeding against* the person who made the plea or offer. [Emphasis added.]

---

[3] In accordance with the court rule then in effect, MCR 6.101(F)(3)(b), Circuit Judge Borchard reviewed the preliminary examination record and determined that a sufficient factual basis existed for a finding that Lichon was guilty of the charged offense.

A majority of the panel favored a construction "which would preclude the admission of evidence of a nolo contendere plea in proceedings which are brought *against* the person who made the plea, but not in proceedings which are brought *by* that person"; *id.,* pp 180-181, and opined that "[i]t would be contrary to public policy and a mockery of justice to allow a convicted felon to profit from his crime." *Id.,* p 182. (Emphasis added.)

On the other hand, the dissent stated, "I read MRE 410 to provide that a nolo contendere plea is inadmissible against the person making the plea and that that exclusion applies to any proceeding, civil or criminal." *Id.,* pp 183-184, n 1.

II

Prior to its recognition by statute[4] in 1969, and by court rule[5] in 1973, the nolo contendere plea was not available to a criminal defendant in Michigan. As our Court of Appeals has observed, "there is neither history nor a tradition of nolo contendere under Michigan jurisprudence . . . ." *People v Gonzales,* 70 Mich App 319, 322; 245 NW2d 734 (1976). See also *People v Franchi,* 3 Mich App 511; 142 NW2d 881 (1966).[6]

The Legislature's 1969 amendment of MCL 767.37; MSA 28.977 added only the following sentence:

At the arraignment of any person upon an indictment or upon the charge in a warrant, com-

---

[4] 1969 PA 334.

[5] GCR 1963, 785.7.

[6] A comment provided by Judge BEASLEY in *People v Gonzales, supra,* p 322, is not without support. He wrote, "Perhaps, in some situations the cause of justice has been served by the adoption and use of the nolo contendere rule. But many believe that the problems and confusion caused by the nolo contendere plea far exceed and outweigh any benefits."

plaint or information the court may accept a plea
of nolo contendere and if such a plea is accepted,
*the court shall proceed as if he had pleaded guilty.*
[Emphasis added.]

Since it is clear that this statutory base for nolo
contendere lends no support for the position taken
by the majority in this case, we turn our attention
to MRE 410 and its construction.

Surely, a heavy burden of persuasion should be
borne by any who contends that Lichon can main-
tain a suit on his fire insurance policy after being
convicted and sent to jail for attempted arson.
Obviously, where a civil suit is instituted *by* a
person who has pleaded nolo contendere, it is not a
proceeding *against* the pleader.

As adopted in 1978, the wording of MRE 410
was identical to its federal counterpart, FRE 410,
which also provided that "a plea of nolo
contendere . . . is not admissible in any civil or
criminal *proceeding against* the person who made
the plea . . . ."

The majority relies upon the fact that the fed-
eral rule was amended in 1980.[7] However, MRE
410 has remained unchanged since its promulga-
tion in 1978. In the majority opinion, it is asserted
that the federal rule "was altered in 1980 in order
to foreclose the sort of interpretation as that of-
fered by the defendant." (*Ante*, p 423.) Of course,
even if that were true, this Court would in no
sense be bound, and particularly is that so since
we have declined, for nearly a decade, to follow
the federal lead.

---

[7] As amended, FRE 410 provides:

[E]vidence of the following is not, in any civil or criminal
proceeding, admissible against the defendant who made the
plea . . . .
(2) a plea of nolo contendere . . . .

Furthermore, there is no decision by any federal appellate court, before or since the 1980 amendment, which supports the majority's assertion. Indeed, the only federal appellate court to confront this issue has come down solidly against the majority's position. The United States Court of Appeals for the Sixth Circuit recently decided that the federal rule, FRE 410, even as amended in 1980, does not protect a defendant who has pleaded nolo contendere when he becomes the plaintiff in a civil suit.

In *Walker v Schaeffer*, 854 F2d 138 (CA 6, 1988), two persons were arrested for disorderly conduct and reckless driving, and pleaded nolo contendere. Later, under 42 USC 1983 they brought a civil action against the police officers, alleging false arrest. The court ruled that the plaintiffs were estopped from making such a claim in the subsequent civil action. The court explained:

> We do not consider our conclusion to be barred by Fed R Evid 410, which provides that evidence of "a plea of nolo contendere" is not, "in any civil or criminal proceeding, admissible against the defendant who made the plea." This case does not present the kind of situation contemplated by Rule 410: the use of a nolo contendere plea against the pleader in a subsequent civil or criminal action in which he is the *defendant*. . . . In this case, on the other hand, the persons who entered prior no-contest pleas are now plaintiffs in a civil action. Accordingly, use of the no-contest plea for estoppel purposes is not "against the defendant" within the meaning of Fed R Evid 410. This use would be more accurately characterized as "for" the benefit of the "new" civil defendants . . . .
>
> We find a material difference between using the nolo contendere plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those

submitting a plea interpreted to be an admission which would preclude liability. Rule 410 was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil *liability.* We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability . . . . [*Id.,* p 143. Emphasis in original.]

No case on point from any jurisdiction, with the exception of a recent Michigan Court of Appeals decision,[8] is cited by the majority to support its position. That there is such a dearth of authority should not be surprising. Presumably, there are very few who have dared to attempt the remarkable feat which Mr. Lichon now seeks to achieve.

III

In other situations, this Court is required, when construing statutes, to look to the intent and purpose of the Legislature. That is not the case here. The question before us is the intent of this Court and the policies we deem to be appropriate.

Where, as here, the subsequent civil action is based upon the same incident or transaction, evidence of a nolo contendere plea in an earlier criminal proceeding is clearly relevant. As the authors of one leading text have explained, "the fact that a defendant has pleaded guilty or *nolo contendere* is convincing evidence of guilt." 2 Weinstein & Berger, Evidence, ¶ 410[03], p 410-34.

[8] *Ramon v Farm Bureau Ins Co,* 184 Mich App 54; 457 NW2d 90 (1990). The *Ramon* panel's statement that use of the nolo contendere plea in a proceeding instituted by the convicted arsonist to collect from his insurance company would render use of the plea "meaningless" is clearly wrong. A nolo contendere pleader would still be protected from use of the plea in any criminal or civil proceeding brought against him, e.g., to impose civil liability for damages. Such benefits are hardly "meaningless."

The same authors also state:

> The relevancy aspect of the plea is based upon the hypothesis that "If a man pleads (or offers to plead) guilty, he probably believes he has done the acts required to make him guilty; and if he has this belief, he probably did the acts." The probative force of this line of proof is high despite the fact that the plea may have been due to other reasons . . . such as . . . desire to compromise to avoid the embarrassment of prosecution, or the like. Since a plea of *nolo contendere* may not be accepted "without first . . . addressing the defendant personally [and] determining that the plea is voluntary . . ." and people who think themselves innocent usually plead not guilty, a plea of *nolo* also could be found by a juror to have substantial probative force. [*Id.,* p 410-25.]

Exclusionary rules, such as MRE 410, which make relevant evidence inadmissable, should be narrowly drawn and strictly construed so as to apply only when the exclusion of relevant evidence will serve an overriding public interest that transcends "the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v United States,* 364 US 206, 234; 80 S Ct 1437; 4 L Ed 2d 1669 (1960).

A public interest can be identified which provides some justification for the existence of the nolo contendere plea. However, the ranking of that interest on a scale of comparison with the truth-seeking function is probably reflected by the fact, already noted, that the nolo contendere plea was not even recognized in Michigan until 1969.

Apparently, the policy objective which underlies recognition of nolo contendere and this exclusionary rule is the conservation of judicial and prosecutorial resources through the promotion of plea bargaining. As Professor McCormick has noted,

"Effective criminal law administration in many localities would hardly be possible if a large proportion of the charges were not disposed of by compromise."[9] However, to the extent that plea bargaining is condoned, it is viewed by many, in and out of the legal profession, as a necessary evil that should be carefully limited and scrutinized. Surely, the promotion of plea bargaining is not a public interest so overriding and paramount as to compel a strained construction of this exclusionary rule—a construction which actually aids the criminal defendant if he seeks to profit from his crime.[10]

The line which should be drawn in this case is not new to the law. Historically, evidence of a criminal conviction, plea-based or otherwise, was inadmissible in a subsequent civil suit. However, a distinction was made between civil proceedings brought *against* the criminal defendant and those brought *by him* to take advantage of his criminal act.[11] In the latter situation, courts have almost universally admitted evidence of the conviction in

[9] McCormick, Evidence (3d ed), § 274, p 814.

[10] It seems reasonable to predict that the rule which the majority adopts today will discourage use of nolo contendere plea bargains by prosecutors, and will make it less likely that such pleas will be accepted by trial courts. A trial court is required by MCR 6.302(D)(2)(a) to state on the record "why a plea of nolo contendere is appropriate" before it can be accepted.

[11] Generally, a judgment of conviction is considered to be hearsay when introduced in collateral proceedings, and at early common law, convictions were usually held inadmissible. However, in analyzing exceptions to the hearsay rule, McCormick observes:

There is . . . a growing tendency to admit a prior conviction for a serious criminal offense in a subsequent civil action. . . . *The tendency is most noticeable when the judgment is offered in a subsequent civil case in which the convicted defendant seeks affirmatively to benefit from his criminal offense, for example, a convicted arsonist sues to recover upon his fire insurance policy.* [McCormick, n 9, *supra*, § 318, pp 894-895. Emphasis added.]

the civil suit.[12] The Virginia Supreme Court reasoned:

> To permit a recovery under a policy of fire insurance by one who has been convicted of burning the property insured, would be to disregard the contract, be illogical, would discredit the administration of justice, defy public policy and shock the most unenlightened conscience. To sustain such a judgment would be to encourage and give support to the current thoughtless and carping criticisms of the legal procedure, and to justify the gibe that the administration of the law is the only remaining legalized lottery. [*Eagle, Star & British Dominions Ins Co v Heller,* 149 Va 82, 111; 140 SE 314, 323 (1927).]

In light of that distinction drawn at common law, it is reasonable to believe that this Court intended to draw a similar line when, in 1978, it adopted MRE 410 and used the words which plainly limit the evidentiary protection given a nolo contendere pleader to "any civil or criminal *proceeding against* the person who made the plea . . . ."[13]

---

[12] See *Connecticut Fire Ins Co v Ferrara,* 277 F2d 388 (CA 8, 1960), and the cases cited therein.

[13] The majority points also to MRE 803(22), which recites that the hearsay rule does not exclude evidence of "a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime . . . ." In construing the hearsay rule, it is reasonable to surmise that the exclusion of nolo contendere-based convictions as hearsay is to be treated in a manner consistent with the construction given to MRE 410. In other words, the purpose underlying MRE 803(22) is enforcement of the exclusionary policy reflected in MRE 410. See 4 Weinstein & Berger, Evidence, ¶ 803(22)[01], p 803-354 (exclusion under FRE 803[22] is consistent with exclusion under FRE 410); and McCormick, n 9 *supra,* § 318, p 893 (admissibility of nolo contendere pleas under the hearsay exception would negate their inadmissibility in subsequent proceedings). Accordingly, to the extent that evidence of a nolo contendere plea is considered admissible under MRE 410 when a pleader becomes the plaintiff in a subsequent civil suit, there is no sound policy or logic which would require rote exclusion under MRE 803(22).

When a criminal defendant is allowed to plead nolo contendere, he not only avoids the time and expense of trial, but he avoids making embarrassing admissions in public. In this case, the plea bargain went further: the prosecutor reduced the charge to attempted arson, he agreed to make no comment on the sentence, and he agreed to take no action to revoke Lichon's license to practice pharmacy.

But, of course, the major concession extended to a person who pleads nolo contendere is protection from use of the plea in a civil proceeding brought against him by others who seek to impose liability for damages arising out of the criminal activity of which he is convicted. The policy justification underlying MRE 410 must be stretched very far to make such protection available to a nolo contendere pleader.

I find no basis in policy or the plain language of MRE 410 to justify the majority's expansive interpretation which stretches the rule much further and turns it into an offensive weapon in the hands of one who has been convicted of a serious crime.[14]

RILEY, C.J., concurred with GRIFFIN, J.

BOYLE, J., concurred only in the result reached by GRIFFIN, J.

[14] While recognizing "the force" of the argument "that public policy should prohibit a party from relying on a nolo contendere plea in a case where that party is a plaintiff" (*ante,* pp 422–423), the majority suggests that our construction could lead to "nonsensical results" in future hypothetical cases that are not before us. (*Ante,* p 424.) Since the policy is sound and our construction makes sense in this case, it ought to be applied in this case. Concerns about its possible application in future hypothetical cases can, and should, be addressed by this Court by simply amending the rule.